JAMES BABCOCK, Complainant and Appellant,

*vs.*

JOHN A. PERRY, impleaded with JOSEPH BABCOCK, JANE BABCOCK and DEBORAH C. BABCOCK, Appellee.

APPEAL IN EQUITY FROM THE CIRCUIT COURT FOR WALWORTH COUNTY.

The negligence of a solicitor is not alone sufficient cause for vacating a decree *pro confesso;* the party applying for relief must also show that he has a good defence to the suit, and that he himself has not been guilty of laches.

The application of a defendant for the opening of an order *pro confesso,* must be accompanied with an answer disclosing a valid defence.

If the answer accompanying the petition to vacate an order *pro confesso,* discloses no meritorious defence, the petition will be denied, whatever may have been the occasion of the default.

It is no excuse for a party failing to appear and answer the bill, in pursuance of an order of the court, that he did not wish to incur the expenses of a defence, and that he supposed that his rights would be adequately protected without such appearance.

THE bill in this cause was filed August 21st., 1852, to foreclose two certain mortgages executed by Joseph C. Babcock, and Jane, his wife. Deborah C. Babcock was a subsequent incumbrancer, and John A. Perry, a subsequent purchaser of a part of the mortgaged premises. All the defendants were personally served with process, but none of them appeared, and the bill was taken as confessed by all the defendants prior to the October term, A. D. 1852. At said term, proof was made in open court, that the premises could not be sold in parcels without material injury to the parties interested, and a final decree, bearing date December 8th, 1852, was made for the sum of $283.04 then due, setting forth that the sum of $399.16 was secured and unpaid by the notes and mortgages described in said bill of complaint, and directing " that all and singular of the mortgaged premises mentioned in the bill of complaint, and therein described, be sold at public auction by and under the direction of the sheriff," &c.

The premises described in said mortgage were sold by virtue of said decree, February 12th, A. D. 1853, and purchased by,

the complainant, and a deed executed and delivered to him by the sheriff. The sheriff's report of said sale was filed May 28th, of May term, 1853, and attached thereto was a draft order, confirming said report of sale, but not signed by the judge, and a motion for confirmation of report was made.

On the 23d day of May, 1853, John A. Perry filed his petition for a rehearing, which petition shows the making of said decree, and "that it is recited therein that said premises were so situated that they could not be sold in parcels without injury to the interests of the parties," and sets forth the order of sale as above stated.

Said petition then claims in substance, that the foregoing provisions of said decree are inequitable and erroneous, because the said Perry was a subsequent purchaser of a part of said premises, and the balance of said premises then belonging to the mortgagor, if sold separately, would have paid all incumbrances on the whole premises at the time of said Perry's purchase.

Said petition further states, that on the 27th of June, 1851, Joseph C. Babcock purchased all of said premises, to wit: east half of the west half of the southeast quarter of section 10, town 4 north, of range 17 east, excepting two rods wide on the north end. Also, an equal undivided one-half of the northeast quarter of the northwest quarter of the same section, for $700, and paid $200 down, balance secured by mortgage, which is the mortgage first described in said bill of complaint. That on the 16th of October, 1851, he gave another mortgage on the same premises to Deborah Babcock for $100, and on the 6th of March, 1852, sold and conveyed the west half of the east half of the west half of the southeast quarter of said section to Geo. H. Taylor, for $200, the greater part of which was paid to the said complainant as part payment on the said $500 mortgage, and that thereupon it was expressly agreed between complainant and said Taylor, that said last-described piece of land should be released from the mortgage held by complainant; and that Taylor purchased under that agreement, built a house and improved the land, and that defendant, Perry, purchased of Taylor, with knowledge of this agreement, and relying upon it, on the 3d of June, 1852, for a valuable consideration, and caused his conveyance to be recorded (complainant then being the owner of the

$100 mortgage), believing said premises to be free in equity, and that on a foreclosure, the balance of said premises in the hands of the mortgagor was sufficient to pay all incumbrances thereon.

The petition further states, that on the 5th of June, 1852, the said Joseph C. Babcock gave two other mortgages to the complainant on the remaining portion of said premises still in his hands, one for $72, and the other for $134.64, the first of which being the second one described in the said bill of complaint, upon which, and the said $500 mortgage, the said decree is based and founded; and said petition further charges that the mortgages executed on the 5th day of June, 1852, were given without any good and valid consideration, and for the purpose of defrauding the said Perry.

Said petition further states that the petitioner neglected to appear and defend his rights, because he did not wish to incur the costs and expenses of defence, inasmuch as the complainant had agreed with Taylor to release his part of said premises from his mortgage, and more especially because he did not believe any one could be found who would swear that said premises could not be sold in parcels as well as together, and supposed that the premises would be sold in the inverse order of alienation, and in that case he intended to bid the amount of the two mortgages upon that part of said premises not conveyed to him.

That on the 12th day of February, 1853, the premises were advertised for sale under the decree; that on and before the sale the said petitioner offered and tendered to the complainant the full amount of the two mortgages, which were liens at the time of his purchase on the whole premises, and also offered to bid the same amount for that portion of the premises not conveyed to him, and demanded of the said complainant that said portion be sold separately, which the complainant refused to have done, and that the whole was sold together and bid in by the complainant. Said petition then prays for a rehearing, &c.

On the 24th day of May, 1853, said Perry filed several *ex parte* affidavits, showing that in the opinion of said affiants the mortgaged premises might have been sold in parcels without injury to any of the parties.

That, at the May term, 1853, no argument or decision was had, either on the motion to confirm the report of sale or on said

petition for a rehearing. That afterwards, and at the October term, 1853, the said petition for a rehearing came on for argument, and was argued by counsel, and the prayer thereof denied, but that no entry of said decision or order was made by the clerk, although an entry of the hearing and argument was duly made October 2d; that it was held under advisement, and that no order as to the confirmation of said sale was made.

That at the May term, 1854, the complainant again moved for confirmation of report of sale, and H. S. Winsor, one of the counsel of the said defendant, John A. Perry, filed an affidavit setting forth that the said Perry was interested as a purchaser of a part of the mortgaged premises subsequent to one of the mortgages described in the bill of complaint; that previous to the bill being taken as confessed, he advised said Perry that it was an ordinary foreclosure, that it was not necessary for him to answer, and that he would save cost by not answering, and that such advice was given in the full belief and confidence that the proceedings in the case would be conducted according to the ordinary practice of the court, and that the decree would of course direct the land to be sold in parcels, in the inversed order of incumbrances and alienations, because he believed it could not be sold together without a flagrant violation of the practice and principles of a court of equity; that Perry acted upon such advice and interposed no defence; that this deponent was not advised as to the form of the decree until about the time the premises were advertised for sale; that deponent, at the request of Perry, then applied to the judge of said circuit for an order staying proceedings on the sale until the next term; that the judge declined staying the proceedings, saying that the defendant's right could be protected on the motion to confirm the report of sale, and further stating that at the October term, 1853, the said Perry brought in his petition for a rehearing of said cause, supported by affidavits; that said petition for a rehearing was heard by the late presiding judge of the circuit, and by him denied upon the ground that in his opinion it was not a case for rehearing, but for a bill of review; that, in his opinion, the fraud or wrong consisted in the complainant's inducing the judge to make a decree under a misconception or misunderstanding of the true merits of the case, and the proper situation of the parties and premises in the cause.

That deponent had been advised that said Perry intended to file a bill of review, and since said notice of confirmation he had not had time to prepare the bill and papers in time for hearing at this term, and prayed that the order of confirmation might not be made until next term. In order that said Perry might prepare his case for relief, no order was made confirming said report of sale, and the same was continued.

No farther proceedings were had in this cause until October term, 1854, at which time, October 3d, the said defendant, Perry, filed his petition and presented an answer which he proposed to file. The petition was as follows:

*To the Circuit Court for the County of Walworth in Equity:*

The petition of John A. Perry, one of the above-named defendants, showeth:

That on the 31st day of August, A. D. 1852, the above-named complainant filed his bill in this court to foreclose two mortgages executed by the said Joseph C. Babcock and Jane, his wife, upon certain premises which are described in the bill of complaint in this cause, to which your petitioner begs leave to refer, in which bill of complaint your petitioner was made a party defendant, and was duly served with process to appear in said court on the 11th day of September then following. Your petitioner further shows that he has been informed, and verily believes, that soon after the time for appearance had expired, an order was duly entered in said cause, requiring all of the said defendants to appear and plead, answer, or demur to said bill of complaint within thirty days from the entry of said order, or, in default thereof, that said bill would be taken as confessed against them. Your petitioner further shows that after the entry of said order, and before the entry of any order taking said bill as confessed, your petitioner counseled with H. L. Winsor, an attorney and counselor at law of this court, concerning the necessity of making a defence in said cause, and from him learned that it would only be necessary to have the court informed that your petitioner was a subsequent purchaser of a parcel of the mortgaged premises, and the court would decree that the premises be sold in parcels, and that the parcel purchased by your petitioner being the first parcel purchased, would be the last one sold, and that he, the said Winsor, would see that the matter should be properly at-

tended to; and relying upon the advice so obtained, that your petitioner's interest in said mortgaged premises would be properly attended to, your petitioner heard nothing further respecting the progress of the cause until about the time the said premises were advertised for sale under the said decree, on or about the first day of January, A. D. 1853, when, to his surprise, he found that said premises were ordered to be sold in one body, and that your petitioner, through the neglect or misunderstanding of his counsel, had been denied the opportunity of making any defence in said suit. And your petitioner further shows that, soon after said premises were advertised for sale, he petitioned the Hon. E. V. Whiton, judge of said court, for an order staying the sale of said premises until your petitioner could be heard at the next court upon a petition for a. rehearing of said cause, and that the judge sent back said petition without any order staying the sale, saying that he did not like to order stays of judicial sales upon *ex parte* evidence, and that your petitioner's rights would as effectually be protected after the sale as before, and that on coming in of the sheriff's report, and on asking confirmation of the sale, your petitioner could then present his petition for a rehearing, or make any objection that he might have to that proceeding and sale.

Your petitioner further states, that acting upon said suggestions he filed his petition for a rehearing of said cause at the next term of said court, when the said complainant asked for a confirmation of sale, but the court being held for only half the usual length of time, did not reach this business, and consequently the motion for confirmation and the petition for a rehearing lay over until the last October term of said court, when they were taken up and argued; but the judge of said court, being of the opinion that your petitioner had mistaken his proper form of remedy, overruled the petition, but did not confirm the sale. Your petitioner further states that he attended the sale of said premises, to wit: the 12th day of February, A. D. 1853, and asked and demanded of the said complainant that the said premises should be sold in parcels, and offered and agreed that in case the parcel not covered by your petitioner's deed should be first put up for sale, to bid enough upon it to cover the debt, interest and costs of all mortgages upon the land at the time your

petitioner purchased his parcel, but the complainant would not consent, and directed the sale of the whole premises in a body, and bid them in himself for the sum of four hundred dollars, that being less than the whole debt or incumbrance on said premises.

Your petitioner further shows that at the last term of said court he presented an affidavit opposing the confirmation of said sale, and asking that the confirmation be postponed until your petitioner should have time to prepare such a statement of his case as he should be advised, which request of your petitioner was granted.

Your petitioner therefore asks this court to set aside the order taking said bill as confessed against your petitioner, and all subsequent proceedings upon such terms as shall be just and equitable, and let your petitioner put in an answer in the cause, which is herewith submitted, and that your petitioner may have such other or further relief in the premises as shall be meet, agreeable to equity, and your petitioner, &c.

JOHN A. PERRY.

The answer admitted the complainant's right and set up that Perry was a subsequent purchaser of a part of said mortgaged premises, and claimed that the decree should direct a sale in parcels and in the inverse order of alienation, but does not set up any agreement, nor want of consideration of said mortgages or either of them, or any fraud.

On the 6th of October, 1854, the complainant filed a motion to dismiss said petition, and for reasons assigned the following:

1st. Because the decree in this cause has been enrolled, and cannot be vacated on petition.

2d. Because a petition for a rehearing, in all respects similar to the one above mentioned, has been heretofore filed in this cause, and on argument denied.

Which motion was denied by the Circuit Court.

The cause coming on for argument on the 7th day of October, 1854, the complainant asked leave of the court to file the order *nunc pro tunc*, made by the Circuit Court in this cause at the October term, 1853, denying the prayer of the petition for a rehearing, and that said order be entered according to the terms of the same as stated in the affidavit of H. S. Winsor, filed at the May

term, 1854, and the petition of the said defendant, Perry, filed October term, 1854.

Which motion was denied by said court.

. The said cause was then argued on said petition by the counsel of the respective parties, and that after the argument, on an intimation from the court, H. S. Winsor, one of the counsel for the defendant, asked leave and was permitted by said Circuit Court to file an affidavit to explain the former affidavit of the said Winsor and the sworn petition of the said defendant, Perry ; said affidavit was as follows:

H. S. WINSOR being duly sworn, says that he is one of the solicitors of John A. Perry, the petitioner in this cause ; that he is well acquainted with all the material facts set forth in said petition, filed in this cause on the 3d instant, and that the same are true, excepting wherein it is stated that a certain petition for a rehearing of this cause, filed in this cause at the May term, 1853, of this court, was overruled by an order of this court at the October term, 1853, and as to this matter this affiant would say, that at the last October term said petition was called up and argued by complainant and petitioner, and some authorities referred to, and the court intimating an opinion that the complainant had probably mistaken his proper form of remedy, and that it might be a case for a bill of review, the court was not pressed to make any order, and that no order was made, or entered in said cause, but both parties were left to take such further action in the cause as they should be advised ; and this affiant further states that he drew up the petition filed in this cause at this term of the court, and drew it up from memory, and being hastily stated in said petition that said petition for rehearing had been overruled, when in truth and in fact no order was made in the case to the prejudice of either party in the cause.

And this affiant further states that he cannot find the original letter referred to in said petition, although he has diligently searched for it. At the time he received said letter, it came in the same envelope covering the petition for rehearing sent back by Judge Whiton ; and about three or four months ago said package containing the petition lying carelessly upon his table, this affiant destroyed it, and the presumption now is that said letter was in

said package and was destroyed at the same time, although this affiant thought nothing about it at the time.

And this affiant further states that he has heretofore filed his affidavit in this cause, wherein he has stated that he had advised the said petitioner that it was not necessary to appear and answer; but on subsequent reflection, and by being refreshed in his memory by the said petitioner as to said circumstances, he is satisfied that he was employed by said petitioner to appear and answer said bill, and that the said petitioner had good reason to suppose that this affiant would properly attend to his cause, and this affiant, acting under a mistaken notion as to his being retained, neglected to make any defence for said petitioner, as he has in said petition stated.

And thereupon the said Circuit Court directed the following order to be entered in this cause:

" On reading and filing the petition and answer of John A. Perry, and the affidavit of H. S. Winsor, it is ordered that the order *pro confesso* heretofore entered in this cause against the said John A. Perry, and all subsequent proceedings be, and the same are hereby, vacated and set aside upon the terms and condition that the said John A. Perry pay to the complainant or his solicitors all clerks and sheriff's fees that have accrued since the date of said order, together with the sum of twenty dollars solicitor's fees for opposing the granting of this order, and that the answer of John A. Perry, this day filed, be allowed to stand as his answer to the bill of complaint in this cause.

From which said order and decree the complainant appeals.

*A. O. Babcock*, solicitor for appellant.

*John W. Cary*, of counsel.

*Winsor & Smith*, solicitors for appellee.

*By the Court*, SMITH, J. It is not necessary to recapitulate here the facts of this case. The petition prays that the order of the court below, taking the bill as confessed, at the October term, A. D. 1852, and that all subsequent proceedings had in the case, may be set aside, and that he may be let in to answer;

and the reason assigned therefor, is the negligence of his solicitor to appear in the cause and defend the same.

Negligence of solicitor is good ground on which to base an application to set aside a default. When this fact is clearly established, the court may, in its discretion, grant the relief so prayed for. But it is not imperative upon the court to set aside a default for this cause alone. It must further appear that the party has a good defence to the suit, and that he himself has not been guilty of laches. Indeed, all the circumstances of the case must be such as to induce the favorable consideration of the court. 1 *Barb. Ch. Pr.* 368 *et seq.; Baxter vs. Lansing,* 7 *Paige,* 352; 1 *John. Ch. R.* 414; 2 *Barb. Ch. R.* 115, 395; 3 *Paige,* 206; 5 *id.* 164; 8 *id.* 176; *Rogun vs. Walker,* 1 *Wis.* 643.

If the party has been guilty of negligence or laches himself, the negligence of his solicitor will not avail to sustain the petition. The bill in this case was filed August 21, 1852. The petitioner was made party defendant, and was personally served with process. The usual order to answer was taken, and no appearance for either of the defendants having been entered, in due time the order taking the bill as confessed was entered, and at the October term, 1852, a final decree of foreclosure was made; and upon proof taken in open court, that the mortgaged premises could not be sold in parcels without prejudice to the interests of the parties, the whole was ordered to be sold together. The sale was made the 12th day of February, 1853, the complainant becoming the purchaser, and at the May term, 1853, application was made to the court for confirmation. At the same May term, 1853, Perry filed his petition for a rehearing, in which, among other things, as an excuse for not appearing to defend the suit, he says that " he neglected to appear and defend his rights, because he did not wish to incur the costs and expenses of said defence, inasmuch as the complainant had agreed with Taylor to release his part of the premises from his mortgage, and more especially because he did not believe that any one could be found who would swear that said premises could not be sold in parcels, as well as together, and supposed that the premises would be sold in the inverse order of alienation, and in that case he intended to bid the amount of the two mortgages for that part of said premises not conveyed to him."

We do not suppose that any one will insist that this is a valid excuse for such neglect of the petitioner. All the while from the commencement of the suit in August, 1852, until the day of sale under the final decree, the defendant contemplated no other measures for the protection of his rights, than such as he could render available to him at the sale of the mortgaged premises. If he had desired only to secure a separation of the mortgaged premises at the sale thereof, it must have occurred to him or to his advisers, if he had any, that the time for doing so was at the making of the order of sale, and not at the time of the execution of such order. He had notice, as appears by his own petition, of the time of sale; he took divers and sundry steps in relation to the execution of the order of sale; but during all this time he did not appear before the court below to have his rights proved and adjudicated, and all for the reason that he " did not wish to incur the expense of a defence."

Should it be admitted as a legal excuse, that the party did not wish to incur the expense of appearing and defending his rights in a suit in equity, to which he is made a party, there would be no end to applications for a rehearing on the part of those who may have chanced to misjudge as to their policy or duty in the given case. Should the rule of practice suggested by the petition prevail, any defendant might lie by and wait a final decree of the court, because he could not suppose that it would be adverse to him or prejudice his rights; and if, in the end, his expectations should chance to be disappointed, he could readily obviate all the risk of his experiment, by simply setting forth the fact that the court had not done as he expected, and, therefore, is bound to grant him a rehearing. It is the duty of a party, when informed by the process of the court of proceedings in which he may be interested, or may be commanded to appear and answer the premises, to render a prompt obedience; and if he fail to do so, he must abide the consequences, unless he can render a better excuse than that the decision of the court, or the evidence of the party or witnesses, were different from what he expected it would be, or that he did not wish to incur the expense of defending his rights. Yet the first petition for a rehearing is substantially neither more nor less. The facts set up in the petition are matters of defence, if indeed they amount to

a defence, which were all within the knowledge of the petitioner at the time of the service of process, and we cannot perceive how they could be made more or less available to him, whether the premises were decreed to be sold together or in parcels. If they were sold for the full value, his rights could be protected upon the distribution of the proceeds, and he had notice of the sale, and could attend, as it appears he did, and bid if he chose, to their full value. Or, if from any undue cause the premises were sold for less than their value, a resale might have been ordered. The excuse for not appearing is totally inapplicable to the nature of the defence sought to be interposed.

This petition not meeting with the favor of the court, at the October term, 1854, the defendant Perry filed another petition, praying that the default might be opened, and all subsequent proceedings set aside, and that he might be let in to answer, at the same time tendering an answer. This last petition is substantially like the first, except that there is an attempt in the last to charge the omission to appear and defend to the negligence of a solicitor, instead of the laches of the party, as in the first. Both of the petitions are supported by the affidavits of H. S. Winsor, Esq. The first proves the truth of the allegation in the first petition, that the petitioner declined to appear and defend on account of the expense, and the second attempts to sustain the last petition by assuming negligence on his part as solicitor for the petitioner. These two petitions, and their accompanying affidavits, are utterly irreconcilable, though the last falls far short of establishing the fact of such a timely and effectual retainer and employment as to justify the opening of the decree *pro confesso*, and the subsequent proceedings, on the ground of the negligence of the solicitor. We are not disposed to comment upon these discrepancies, but we cannot shut our eyes to the position of the case in which these several papers place and leave it.

Nor can we fail to observe the discrepancy between the allegations contained in the last petition and the affidavit of Mr. Winsor made at the October term, 1854, and in the affidavit of Mr. Winsor made after the argument in relation to the order of the court denying the first petition. It would seem that the presumption should be stronger in favor of the correctness of the

first affidavit, and it is also corroborated by the statement of the petitioner himself.

When a solicitor shall have been regularly employed, or, in other words, retained, so as to fix his responsibilities to his client and to the court, shall have prepared and filed an answer, taken proofs, &c., but neglects to attend at the hearing, without the connivance or fault of the client, it is but reasonable and just that the court should interpose in behalf of the client so betrayed, and relieve him from the consequences of such infidelity. But where a party fails to take any steps to prepare his case, employs, or, in better terms, retains no solicitor, or attorney, or counsel, makes no appearance, produces no matter of defence which might open the way for the introduction of evidence, and allows his case to go on, as it may chance, to a final determination, until at last, he finds he has lost an advantage or right which he might otherwise have secured, he certainly is in no condition to ask the indulgence of this court. *See Milspaugh vs. McBride*, 7 *Paige*, 509; *Tripp vs. Vincent*, 8 *Paige*, 176.

The court will also require the defendant, in cases like this, to accompany his petition with the answer he proposes to put in, so as to be informed of the character and sufficiency of the defence. *Wells vs. Cruger*, 5 *Paige*, 164. The defence proposed or offered must not only be sufficient in law, but it must be conscionable in character. *Wager vs. Sickle*, 3 *Paige*, 407; *Lansing vs. McPherson*, 3 *Johns. Ch.* 424; 13 *Ves.* 563.

We have looked into the answer in this case, and are unable to perceive any defence to the bill. It admits the mortgages mentioned in the bill to be good and valid, and also the amount claimed to be due. No want of consideration is alleged, nor any fraud, nor any agreement outstanding to control the ordinary legal effect of the mortgage upon the premises, and it sets up that the defendant is a subsequent purchaser of a portion of the mortgaged premises, and claims that the decree should direct the sale to be made in parcels in the inverse order of alienation. This is no defence to the merits of the bill. The fact of a sale of a portion of the mortgaged premises *may* suggest equitable considerations in directing the mode of executing the decree. But we are not aware that the mortgagor may divide up the mortgaged premises into such parcels as he pleases, and by con-

veying them to subsequent purchasers, compel the mortgagee or the court to observe the same, or any other subdivision, in the decree of sale. These are all matters addressed to the equitable consideration of the court upon the proofs submitted.

It is very clear to our minds, that the case made by the papers herein, is not one for a rehearing, even if the answer produced disclosed a defence, and it is equally clear that no defence whatever is disclosed.

If improper or undue means have been resorted to in the execution of the decree, that fact may afford cause for denying confirmation of the action of the officers of the court in that behalf. But it affords no ground for opening the decree, or unsettling the merits as they have been adjudicated. Whether or not the sale in this case was properly conducted, or whether the court ought to, or can now modify the order of sale, or whether it ought to confirm the sale already made, or whether the petitioner is entitled to relief in any other mode, are questions not now before us. We are satisfied that the court below erred in making the order from which this appeal is taken, and that the same must be reversed. Were the answer filed, and a hearing had upon the bill and answer, the same decree would require to be made touching the merits, and proof taken as to the condition of the mortgaged premises, and the manner of selling the same as before.

It seems that the proof was taken in open court, touching the condition of the mortgaged premises, not on account of any allegations in the bill, but in conformity with the requisitions of the statute. This is necessary to be done, whether an occasion for it be set up in an answer or not, and it is difficult to perceive how the answer produced by the defendant would have helped the matter. The answer could not have been proof of the facts set up in it. Why then set aside a decree *pro confesso*, and incumber the record with an answer which sets up no defence, and delay the proceeding to make an issue which the statute has itself already made, and which the court has already tried and determined?

The order of the Circuit Court is reversed, and the cause remanded for further proceedings according to law.